993 F.2d 1547
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward BULGER, Defendant-Appellant.
 No. 92-1753.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1993.
 
 Before KEITH and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Edward Bulger here appeals a conviction for possession of cocaine with intent to distribute it. The question we are asked to decide is whether a confession that Mr. Bulger gave the authorities ought to have been suppressed as having been exacted by a threat to arrest Mr. Bulger's mother. Concluding that the district court has not been shown to have erred in its determination as to the voluntary character of the confession, we shall affirm the conviction.
 
 
 2
 * On February 22, 1990, Mr. Bulger, his brother and co-defendant Terrance Bulger, and his mother Elvira Bulger were at their residence at 247 Kenilworth in Detroit, Michigan. Agents of the Bureau of Alcohol, Tobacco and Firearms entered the premises pursuant to a warrant that authorized a search for firearms and evidence of drug trafficking. Defendant Edward Bulger was found on the first floor, and Terrance and Elvira Bulger were in their respective upstairs bedrooms. All three individuals were given Miranda warnings, and Edward Bulger was handcuffed.
 
 
 3
 Upon searching Elvira Bulger, agents discovered approximately 140 rocks of crack cocaine. Mrs. Bulger waived her Miranda rights both orally and in writing. She then stated that Edward Bulger had given her the cocaine the night before; that she had placed it in her pillow; and that when she heard the agents entering the house she hid it on her person.[1]
 
 
 4
 Shortly thereafter, defendant Bulger again received Miranda warnings. He was taken to the kitchen where his handcuffs were removed and Agents Joseph Secrete, Dion Hogan, and Michael Martin interviewed him for five to ten minutes. Although the agents carried firearms, they did not display them. In what was apparently a businesslike manner, the agents discussed with defendant Bulger the drugs they had found in the house. Bulger, who had five prior convictions, did not appear to the agents to be unduly nervous or upset.
 
 
 5
 Accounts differ as to what defendant Bulger was told during the interview. Agent Secrete, who testified at a subsequent suppression hearing, said that he
 
 
 6
 "told him, you know, I find it hard to believe that someone--I don't know how old she is--she had to be in her--she looked older like in her sixties I'm guessing, and she was on if I'm not mistaken, she's ill and she had like a colostomy bag attached to her. And I just told him, it was hard to believe--I find it hard to believe that this--all this dope is your--is your mother's. And I don't want to see her getting the blame for something she didn't do. And I just want to know the truth on who this drug--who the dope belongs to."
 
 
 7
 Agent Secrete denied that he told defendant Bulger he would arrest his mother if Bulger did not confess that the drugs belonged to him. Defendant Bulger, on the other hand, testified that Agent Secrete told him that if neither he nor his brother Terrance took responsibility for the drugs, their mother would be arrested. Defendant Bulger testified that when his brother said nothing, he felt compelled to speak. It is uncontroverted that he admitted having given the drugs to his mother.
 
 
 8
 Defendant Bulger was indicted on July 10, 1991, on a charge of possession with intent to distribute cocaine. He subsequently moved that his confession be suppressed. A suppression hearing was held before a magistrate judge on December 13, 1991. The magistrate judge filed a report and recommendation in which he recommended that the suppression motion be denied. In addressing the conflicting testimony, the magistrate judge wrote:
 
 
 9
 "To the extent Edward Bulger's testimony is contrary to that of Agent Secrete, I reject it. Not only is Edward Bulger's testimony impeached by his prior record, but it must be viewed with suspicion as self-serving, and lacking the corroboration that supposedly could have been provided by Terrance Bulger, his brother, who was allegedly present at the time. Edward Bulger's recitation is also belied by the fact that his brother, Terrance, did speak up and acknowledge possession of the firearms found upstairs, contradicting Edward's assertion that he (Terrance) remained silent. Also, taken as a whole, Edward Bulger's testimony regarding what was said by the agent is consistent with the testimony of Agent Secrete except insofar as Edward Bulger asserts that the agent specifically threatened to arrest the mother if neither son confessed."
 
 
 10
 Defendant Bulger filed objections, but the district court accepted the report. Defendant Bulger then pleaded guilty to the indictment under Fed.R.Crim.P. 11(a)(2) and preserved his right to appeal the denial of his motion to suppress. Upon conviction he was sentenced to 125 months of incarceration and a five-year term of supervised release.
 
 II
 
 11
 Whether or not a confession is voluntary depends upon whether it was the product of free and rational choice. The focus, in an inquiry into the voluntariness of a confession, is on the state of mind of the accused at the time the confession was made. See Mincey v. Arizona, 437 U.S. 385, 389 (1978); United States v. Murphy, 763 F.2d 202, 205 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986).
 
 
 12
 For a confession to be found involuntary, three tests must be met. First, the confession must have been extorted by objectively coercive police activity. Second, the coercion must have been sufficient, considering the subjective state of mind of the defendant, to have overborne his will. Finally, the defendant's will must have been overborne because of the coercive police activity. See United States v. Newman, 889 F.2d 88, 95 (6th Cir.1989), cert. denied, 495 U.S. 959 (1990), citing McCall v. Dutton, 863 F.2d 454 (6th Cir.1988). Psychological pressure alone may render a confession coerced. See Townsend v. Sain, 372 U.S. 293, 307 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 112 S.Ct. 1715 (U.S.1992).
 
 
 13
 Factual and credibility determinations made by the trial court in connection with a motion to suppress are not disturbed unless they are clearly erroneous. See United States v. Newman, 889 F.2d at 94. In the report and recommendation accepted by the district court in the instant case, the magistrate judge indicated that he did not believe defendant Bulger's account insofar as it was in conflict with the agent's version of what happened. The magistrate judge noted the defendant's past criminal history, the possibility of self-serving testimony, and the absence of corroboration by the defendant's brother, Terrance. This determination is not clearly erroneous, so we must review the confession on the basis of Agent Secrete's account of the questioning.
 
 
 14
 Under Agent Secrete's version of the facts, there was no objectively coercive behavior that would warrant labeling defendant Bulger's confession "involuntary." Bulger was interviewed for a short period of time in a businesslike environment. There was no physical intimidation, physical force, or threat of physical force. No promises were made. Agent Secrete told defendant Bulger that he did not believe his mother was responsible for the cocaine and that he didn't want her to take the "blame" for something she did not do. It is true that this statement may have suggested the possibility that Mrs. Bulger could face some sort of charge. The agents had ample grounds for arresting Mrs. Bulger, however, and the record does not indicate that defendant Bulger's will was overborne in any event. Defendant Bulger has a long history of experience with the criminal justice system. It is unlikely that he was discomfited by the interview itself. He appeared to the agents to be neither outwardly frightened nor upset. Thus, unlike the mothers in Lynumn v. Illinois, 372 U.S. 528 (1963), and in United States v. Tingle, 658 F.2d 1332 (9th Cir.1981), defendant Bulger does not appear to have been particularly susceptible to psychological coercion. See United States v. Jackson, 918 F.2d 236, 242 (1st Cir.1990) (discussing Lynumn and Tingle ); see also United States v. Charlton, 565 F.2d 86, 89 (6th Cir.1977), cert. denied, 434 U.S. 1070 (1978) ("That the defendant's reason was to protect his son does not, in our judgment, render his confession involuntary or necessitate a finding that he was coerced or that his will was overborne"); United States v. McShane, 462 F.2d 5, 7 (9th Cir.1972) (noting that a number of cases have rejected the contention that a confession is involuntary if it is motivated by a desire to shield a loved one or spare her the ordeal of questioning and confinement).
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The agents also found a loaded handgun, a shotgun, twelve rocks of crack cocaine and $591 in Terrance Bulger's bedroom